UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GUGLIELMO FITTANTE, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 2200 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| LEIF OLSSON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Guglielmo Fittante alleges in this diversity suit that Defendant Leif Olsson breached his contract with Fittante and fiduciary duties he owed to Fittante. The court dismissed Fittante's original complaint without prejudice for failure to comply with Federal Rule of Civil Procedure 10(b). Doc. 15. Fittante filed an amended complaint, which Olsson has moved to dismiss under Rule 12(b)(6). Doc. 18. The motion is denied.

On a Rule 12(b)(6) motion, the court assumes the truth of the amended complaint's well-pleaded factual allegations but not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012); *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). The court must construe those facts in the light most favorable to Fittante, the non-movant. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). The court also must consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Fittante's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are set

forth as favorably to Fittante as permitted by the amended complaint and the other materials that must be considered on a Rule 12(b)(6) motion.

Olsson was among the initial investors in and promoters of a venture to create a bank called "Winbancorp," and also served as the bank's President. Doc. 17 at ¶¶ 3, 6. Winbancorp was incorporated in California in 2004, but had yet to be approved to operate as a bank by state and federal regulators. *Id*. at ¶ 4. Olsson and his associates sought to raise more capital for the venture by soliciting contributions from potential investors. *Id*. at ¶ 7. Fittante was one such potential investor, and Olsson told Fittante that Winbancorp needed to raise more funds to show the regulators that it had the "financial readiness" necessary for approval, and added that the bank would be able to issue shares to investors after receiving the regulators' approval. *Ibid*. Olsson assured Fittante that any funds Fittante contributed would be held in escrow by Olsson personally until the bank was approved by the regulators. *Id*. at ¶ 17. Relying on Olsson's assurance, Fittante contributed roughly $180,000 to the bank in 2005 and 2006. *Id*. at ¶ 9.

Fittante heard "very little if anything at all from the organizers" during the next few years. *Id*. at ¶ 10. He learned in April 2009 that the bank had never been approved by the regulators, which led him to demand that Olsson return his money. *Id*. at ¶¶ 10-11. Ultimately Fittante sued Olsson, and in 2011 Fittante settled the suit, without prejudice to its being re-filed, on the understanding that Olsson would return to Fittante any funds still in the escrow account. *Id*. at ¶ 12; *see Fittante v. Olsson*, No. 10 C 6937, Doc. 37 (N.D. Ill. filed Oct. 28, 2010). Olsson returned only $54,000 of Fittante's investment, Doc. 17 at ¶ 12, and so Fittante filed this suit. Fittante alleges that Olsson breached a contract he had made with Fittante and fiduciary duties he

owed to Fittante on account of the escrow arrangement, and demands the return of the balance of his investment, about $126,000.

The court has jurisdiction under 28 U.S.C. § 1332(a)(2), which provides jurisdiction over a diversity suit with the requisite amount in controversy between "citizens of a State and citizens or subjects of a foreign state," with the exception of "an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State." Fittante is alleged to be a citizen of Italy who resides in Germany, not the United States, while Olsson is alleged to be a citizen of the State of Oregon. Doc. 17 at ¶ 1; Doc. 27. The amount in controversy is $125,772.21, Doc. 17 at ¶ 23, which exceeds the $75,000 threshold of § 1332(a).

Fittante says the court should apply Illinois law to his state law claims, while Olsson says that California law applies. But neither party points to any conflict between California and Illinois law that could affect the resolution of this motion, and "[w]here the parties have not identified a conflict between the two bodies of state law that might apply to their dispute, we will apply the law of the forum state—here, Illinois." *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n. 7 (7th Cir. 1993); *see also Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 677 (7th Cir. 2007) (same). If the parties later raise a relevant conflict between California and Illinois law, the court will resolve the choice of law issue at that point.

On the merits, Olsson argues that the amended complaint fails to state a claim for breach of contract. "The required elements of a breach of contract claim in Illinois are the standard ones of common law: (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Wigod*

*v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012) (internal quotation marks omitted). The amended complaint is less explicit than is ideal in identifying an offer to form a contract, but its allegations are sufficient, if just barely, to preclude dismissal. Fittante alleges that Olsson solicited contributions from potential investors in Winbancorp; in other words, Olsson offered a stake in the venture in exchange for monetary investments. Doc. 17 at ¶ 7. One condition of the contract—which presumably was oral, a matter not directly addressed by the parties—was that any funds Fittante invested would be kept by Olsson in an escrow account until the bank received regulatory approval and became able to use the funds. *Id*. at ¶¶ 7, 17. Fittante accepted the offer by performing his part of the deal, transferring funds to the bank. *Id*. at ¶ 9. The mutual obligations just described constitute consideration adequate to give rise to a contract, and the terms just described are clear enough that a court can tell who had what obligations and whether those obligations were performed. The amended complaint also alleges breach: despite Olsson's promise, the funds were not kept safely in escrow, as evidenced by their having somehow disappeared even though the bank was never approved by the regulators. It follows that Fittante was damaged in the amount of the missing money, fulfilling the sixth element.

      The only argument of Olsson's not addressed in the foregoing is this: "[T]he allegations make clear that Mr. Olsson acted, at most, as an agent of Winbancorp. Mr. Fittante's agreement was with the corporate entity, Winbancorp, not Mr. Olsson." Doc. 23 at 3. It is true that if Olsson was acting as Winbancorp's agent when he made the contract with Fittante, if Olsson made the contract on Winbancorp's behalf rather than on his own behalf, and if Fittante knew or should have known all this, Fittante would not have recourse for breach of contract against Olsson personally; a fundamental rule of agency law is that "[u]nless otherwise agreed, a person

making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." Restatement (Second) of Agency § 320 (1958); *see also* Restatement (Third) of Agency § 6.01 (2006) (same); *Gateway Erectors Div. of Imoco-Gateway Corp. v. Lutheran Gen. Hosp.*, 430 N.E.2d 20, 22 (Ill. App. 1981) (same, citing § 320 of the Second Restatement). The problem with Olsson's argument is that the amended complaint does not allege that Olsson was acting as Winbancorp's agent when he made the alleged contract with Fittante, and nor does the complaint, when read with all inferences drawn in Fittante's favor, necessarily imply that Olsson was acting as Winbancorp's agent. Olsson was an officer of Winbancorp, but he was also among its major investors. Doc. 17 at 10 ("The Founders of the Bank, Hugh and Andrew Winokur and Leif Olsson, will directly invest $2.25 million of the required $7.25 million on a *pari passu* basis with other WinBank investors."). Thus, Olsson had a personal interest apart from his role as an officer in getting other investors for his venture. So it is plausible that he acted in his personal capacity as an investor rather than in his official capacity as an agent of Winbancorp when he made the contract with Fittante, and if that is the case, then Olsson could be personally liable for breaching that contract.

Olsson also argues that the amended complaint fails to state a fiduciary duty claim. "Under Illinois law …, recovery for a breach of fiduciary duty requires proof of three elements: '[1] a fiduciary duty exists, [2] that the fiduciary duty was breached, and [3] that such breach proximately caused the injury of which the plaintiff complains.'" *Gross v. Town of Cicero*, 619 F.3d 697, 709 (7th Cir. 2010) (quoting *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000)). Olsson focuses on the first and third elements.

With respect to the first element, Olsson acknowledges that one who commits to hold another's funds in escrow owes the other a fiduciary duty as to those funds. Doc. 23 at 4 (referring to California law); *see TRW Title Ins. Co. v. Sec. Union Title Ins. Co.*, 153 F.3d 822, 829 (7th Cir. 1998) (Illinois law) ("escrow agents owe their depositors a fiduciary duty to disburse the deposits according to the terms of the escrow agreement"); *Bescor, Inc. v. Chi. Title & Trust Co.*, 446 N.E.2d 1209, 1213 (Ill. App. 1983) ("an escrowee, like a trustee, owes a fiduciary duty to act only according to the terms of the escrow instructions"). But Olsson again argues that he was acting as the bank's agent and that any duties that may have existed were owed by Winbancorp rather than by Olsson personally: "[T]he money, rather than being sent to Olsson, was sent to Winbancorp and held in escrow. Plaintiff fails to provide facts suggesting Olsson had any obligation regarding the money sent to Winbancorp and held in escrow. Lacking such a relationship, it is impossible for Plaintiff to allege Olsson breached a fiduciary duty." Doc. 20 at 6. This argument ignores the amended complaint's clear allegation that Olsson "assured the Plaintiff that his funds would be hold [*sic*] in escrow *by him personally* until such time as the Bank was approved by State and Federal Regulators." Doc. 17 at ¶ 17 (emphasis added). Construed in Fittante's favor, the amended complaint must be read to allege that Olsson was offering to undertake an obligation in his personal capacity rather than acting as an agent of the corporation when he committed to hold the funds in escrow. Under Illinois law (or California law, as Olsson recognizes), that means that Olsson personally owed a fiduciary obligation to Fittante with respect to Fittante's investment.

As for the third element, a causal link between Olsson's breach and Fittante's injury, Olsson argues that "while the Complaint does in fact allege Plaintiff suffered damages (loss of

his investment), there is no attempt to relate those damages to any fiduciary duties owed by Olsson or to Olsson's purported breach of such duties." Doc. 20 at 6.  The argument is not persuasive.  As discussed above, the amended complaint adequately alleges that Olsson undertook to hold the funds safe in escrow and thereby acquired a fiduciary obligation to Fittante.  The amended complaint further alleges that the bank never had a use for the funds because it never received regulatory approval to start operating, and also that the funds somehow disappeared, so that most of the funds were unavailable to be returned to Fittante when he demanded that his investment be returned to him.  Doc. 17 at ¶¶ 10-12.  In other words, the amended complaint alleges a direct causal link between Olsson's failure to keep the funds safe, as he had undertaken to do, and Fittante's ultimate inability to find the funds and secure their return.  That is a sufficient allegation of causation.

For these reasons, Olsson's motion to dismiss the amended complaint is denied.  This is not to say, of course, that Olsson will be unable to defeat Fittante's claims on summary judgment or at trial.

February 5, 2013

_____
United States District Judge